# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 27, 2015 Session

## MARK A. WINSLOW v. JOHN BRUCE SALTSMAN, JR., ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 11C229    Joseph P. Binkley, Jr., Judge

_____

### No. M2014-00574-COA-R3-CV – Filed October 21, 2015

_____

Mark Winslow brought suit against Charles Fleischmann and his campaign advertising consultant, John Saltsman, to recover for allegedly false and defamatory statements made in the course of Mr. Fleishman's campaign for election to the United States Congress, and related contractual claims. Mr. Fleishman and Mr. Saltsman moved for summary judgment on the grounds that the statements were not false or capable of defamatory meaning or published with actual malice, and that they took no action to induce a breach of contract or otherwise interfere with the relationship between Mr. Winslow and the Tennessee Republican Party. Mr. Winslow did not contest the grant of summary judgment on the contract claims; the trial court granted the motion as to the defamation and false light claims, holding that there was no evidence from which to infer malice, that the statements were not defamatory or capable of a defamatory meaning, and that any statements upon which the action was based which related to Mr. Winslow were either true or substantially true and, therefore, not actionable. Mr. Winslow appeals. Because Mr. Fleishman and Mr. Saltsman demonstrated that the undisputed facts negate the element of actual malice which is essential to the defamation and false light claims, we affirm the trial court's grant of summary judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

W. Gary Blackburn, Bryant Kroll and Raymond Throckmorton, III, Nashville, Tennessee, for the appellant, Mark A. Winslow.

Paul C. Ney, Jr., Nashville, Tennessee, for the appellee, John Bruce Saltsman, Jr.

Richard E. Spicer, Brent S. Usery, and Lance W. Thompson, Nashville, Tennessee, for the appellee, Charles J. Fleischman.

Herbert H. Slatery, III, Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; and William J. Marett, Jr., Senior Counsel, for the Tennessee Attorney General.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Mark A. Winslow ("Winslow") served as the Chief of Staff for the Tennessee Republican Party ("TRP") from September 2007 to June 2009; during Winslow's tenure, Robin T. Smith, Chair of the TRP, ("Smith") supervised him. In early May 2009, Smith informed the TRP staff that she was considering running for United States Congress and would be resigning her position. Smith offered the TRP staff contracts which would ensure their employment through the end of 2009. Winslow accepted Smith's offer, which continued his employment at a rate of $3,916.00 per month; his contract ("Employment Agreement") also included a termination clause stipulating that Winslow was to be paid four months' salary, $15,664.00, if he was terminated without cause.

On May 15, 2009, Smith resigned; on May 31 the TRP elected a new Chair, Samuel C. Devaney ("Devaney"). Devaney informed Winslow on June 3 that his services were no longer needed as Chief of Staff and offered him a consulting position through August 2009 at half his salary. Winslow declined the offer and on June 9 showed Devaney a copy of the Employment Agreement and presented him with a Release and Non-Disclosure Agreement ("Winslow Proposal"), in which he proposed that he immediately end his employment at the TRP and receive $15,664.00. With the assistance of their respective counsel, Winslow and Devaney negotiated, and on June 15 signed a Release and Non-Disclosure Agreement ("Release Agreement") whereby Winslow would resign his employment effective June 4 and receive from TRP the total sum of $12,504.00 in bi-weekly payments beginning June 15; the Release Agreement contained a confidentiality provision which also prohibited either party from distributing copies. On July 1, Smith announced her candidacy for Congress; shortly thereafter, Winslow volunteered with her campaign and accepted employment as media coordinator.

Contemporaneously with these events, Charles J. Fleischmann ("Fleischmann") announced and began his candidacy for the congressional seat for which Smith was running. Fleischmann hired S&S Strategies, owned and operated by John B. Saltsman,

---

[1] The facts are taken primarily from the pleadings. affidavits filed relative to the summary judgment motions, and the parties statements of undisputed facts, unless otherwise noted.

Jr. ("Saltsman"), to assist with his campaign's message, media presence, and advertising. In the course of his work for Fleishmann's campaign, Saltsman obtained a copy of a financial review of the TRP as of Smith's date of resignation which showed the TRP's debts to exceed assets by $100,000.00, as well as $19,000.00 in overdrafts. Fleishmann and Saltsman also became aware of Federal Election Commission ("FEC") records showing payments from the TRP to Winslow during the time that Winslow was working on Smith's campaign. In late spring to early summer of 2010, Saltsman found an envelope outside his garage containing both the Employment Agreement and the Winslow Proposal.

In July 2010, one month before the primary, the Fleischmann campaign purchased television and print advertisements stating that Smith "left the state Republican party over $100,000.00 in debt[;] . . . [w]orse, on the way out the door, Smith gave her future Congressional campaign staff lavish bonuses." On July 19, in an interview on WGOW radio station, Saltsman stated that Winslow "was paid out of the Republican Party funds for three months while he was working for Robin Smith's campaign. So, in fact, he was getting party funds to work on her congressional campaign," and that the arrangement was "against FEC violations and a bunch of other things."[2] Saltsman was quoted on July 27, by the Knoxville News Sentinel to say the TRP payments to Winslow were "at worst, illegal and, at best, just plain wrong." The following day, the Fleishmann campaign launched a website presenting TRP financial records, FEC records showing TRP payments to Winslow, the Employment Agreement and the Winslow Proposal. Smith lost to Fleishmann in the election.

On January 18, 2011, Winslow filed suit against Saltsman, asserting that Saltsman's statements on the radio and the release of the Employment Agreement and the Winslow Proposal had cast Winslow in a false light and defamed him. Winslow also asserted that Saltsman induced the TRP to breach the confidentiality provisions of the Release Agreement and had, through his statements on the radio and release of the Employment Agreement and Release Agreement, interfered with Winslow's prospective business relations. On November 28, 2011, Fleischmann was joined as defendant; Winslow filed his first amended complaint the next day, asserting the same claims against Fleischmann as those against Saltsman.[3]

In due course Winslow moved for partial summary judgment on the claim of inducement to breach contract. The court denied the motion, finding that genuine issues

---

[2] The quoted statements are from Saltsman's affidavit which was filed in support of his motion for summary judgment; the affidavit does not provide the specific date of the interview. The only evidence in the record that provides a date for the interview is Winslow's affidavit, filed in opposition to the motion.

[3] Winslow initially brought suit against Fleishmann in Davidson County Chancery Court on July 27, 2011. The suit was dismissed voluntarily January 23, 2012.

of material fact remained as to whether the Release Agreement was breached as well as whether or not the parties had intended the confidentiality provision in the Release Agreement to apply to the Winslow Proposal. On January 3, 2013, Winslow moved to join the TRP as a defendant and to file a second amended complaint, alleging that the TRP had breached the confidentiality provision of the Release Agreement; the motion was granted.[4] Winslow resolved his dispute with the TRP and it was dismissed from the suit on November 18, 2013. On December 12 and December 13 Fleischmann and Saltsman, respectively, moved for summary judgment on the claims of tortious interference, inducement to breach contract, defamation, and false light. A hearing on the motions was held on January 23, 2014, and on February 4, the court granted both motions.

On February 13, 2014, Winslow filed a motion requesting the court to make additional findings of fact and conclusions of law as follows:

1. That the court determine specifically whether the comments made by Mr. Saltsman on WGOW Radio in Chattanooga, Tennessee by Mr. Saltsman and subsequently endorsed upon the same program on a different day by Mr. Fleischmann placed Plaintiff in a false light, and if not, the specific reasons for so finding.

2. Whether it was substantially true that Mr. Winslow was guilty of illegal conduct involving violations of federal election law, which conduct was specifically comparable to that of the former Republican party chair in the state of Florida who was under indictment at the time the comments were made.[5]

3. Whether defamation by implication or innuendo is a separate, independent tort from that of common law defamation and therefore had to be pleaded separately.

4. Whether the pleadings in this case regarding the false light are sufficient to state a claim as well of defamation by implication or by innuendo.

5. Whether the Court applied the summary judgment standards adopted by the Tennessee Supreme Court in *Hannon* [sic] *v. Alltel Publishing, Co*., 270 S.W.3d 1 (2008) or that proposed by the General Assembly in T.C.A. § 26-16-101 with regard to each defendant.

---

[4] References herein the "the complaint" are to the Second Amended Complaint unless otherwise noted.

[5] Saltsman's affidavit and Winslow's statement of undisputed facts provide that Jim Greer was a Republican Party chairman in Florida who was indicted for allegedly misappropriating $125,000.00 in party funds.

On March 12, the court entered an order disposing of the motion. With respect to Winslow's first two points, the court reiterated its February 4 ruling that the "subject publications/communications" were not actionable as they were true or substantially true and were not "of and concerning" Winslow and that the specific language of "lavish bonuses," "improper," "illegal," "plain wrong," and "unethical" in those publications and communications was "rhetorical hyperbole and/or statements of opinion based on disclosed, non-defamatory facts," and not actionable. Responding to the third and fourth points, the court reiterated that defamation by implication or innuendo is a recognized tort in Tennessee[6] and that Winslow had failed to specifically plead it; the court went further and held that, even had the defamation by implication or innuendo claim been properly pled, Winslow would have failed to meet his burden to "come forward with clear and convincing evidence from which a reasonable juror could infer actual malice" in that regard. With respect to Winslow's fifth point, the court clarified that it had "considered itself obligated to follow the holding of *Hannan* with regard to the Saltsman claim and T.C.A. § 26-16-101 with regard to the Fleischmann claim."

Winslow appeals, raising the following issues:

1. Whether the General Assembly intruded upon the separate judicial powers of the Supreme Court in violation of the Constitution of the State of Tennessee in enacting T.C.A. §20-16-101.[7]
2. Whether the trial court applied the correct summary judgment standard in its ruling.
3. Whether the spoken words and publications of the defendants placed Mark Winslow in a false light.
4. Whether accusing Mr. Winslow, a long-time loyal Republican, sixteen (16) year employee of Senator Bill Frist, Jr., and former Executive Director of the Republican Party, of conspiring with Ms. Robin Smith to misappropriate Party money for use in a congressional race, and characterizing him as engaging in unethical and illegal behavior would have been highly offensive to a reasonable person in the position of Mr. Winslow.

---

[6] The court cited *Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*., 389 S.W.3d 313, 318 n.5 (Tenn. Ct. App. 2012) for this proposition.

[7] We do not reach this issue as it was not raised or addressed at the trial court level. *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976). As this court has previously noted, "failure to provide notice of a constitutional challenge to the Attorney General as mandated by T.C.A. § 29-14-107 and T.C.A. 24.04 is fatal 'except to the extent the challenged statutes are so clearly or blatantly unconstitutional as to obviate the necessity for any discussion.'" *Buettner v. Buettner,* 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005) (quoting *In re Adoption of E.N.R.,* 42 S.W.3d 26, 28 (Tenn. 2001)).

## II. ANALYSIS

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009). Inasmuch as the complaint against Saltsman was filed prior to July 1, 2011 and the complaint against Fleishmann filed after that date, the standard we apply as we consider the motions for summary judgment in this case is different.[8]

The framework for summary judgment analysis for cases filed prior to July 1, 2011 (referred to herein as the "*Hannan* standard") is as follows:

> The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. Both methods require something more than an assertion that the nonmoving party has no evidence. Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient. The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. . . .
>
> If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. The nonmoving party may satisfy its burden of production by:
>
>> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit

---

[8] Our standard of review of trial court's decision on motions for summary judgment is *de novo* with no presumption of correctness of the trial court's decision, as the resolution of a motion for summary judgment is a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Martin v. Norfolk Southern Ry. Co.,* 271 S.W.3d 76, 83 (Tenn. 2008).

6

> explaining the necessity for further discovery pursuant to
> Tenn. R. Civ. P., Rule 56.06.
>
> *McCarley* [*v. W. Quality Food Serv.*], 960 S.W.2d at 588; *accord Byrd* [*v. Hall*], 847 S.W.2d at 215 n.6. The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

*Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 83-84 (internal citations omitted); *see also Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008).

For cases filed after July 1, 2011, summary judgments are considered in accordance with Tenn. Code Ann. § 20-16-101:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> > (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Irrespective of the standard for summary judgment to be applied, the claims against Saltsman and Fleishmann invoke the same substantive law.

Our Supreme Court adopted the following definition of false light invasion of privacy from the Restatement of Torts when it recognized the tort as a cause of action in Tennessee in *West v. Media Gen. Convergence, Inc.*:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if:
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> > (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*West*, 53 S.W.3d. 640, 645 (Tenn. 2001) (quoting Restatement (Second) of Torts § 652E (1977).

Pertinent to the facts of this case, the *West* court held that "actual malice is the appropriate standard for false light claims when the plaintiff is a public official or public figure, or when the claim is asserted by a private individual about a matter of public concern." *Id*. at 647. Actual malice exists where the defendant publishes or makes a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Hibdon v. Grabowski,* 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). In *Lewis v. NewsChannel 5 Network, L.P.,* this court discussed the nature and quantum of proof necessary to establish reckless disregard in cases in which actual malice is the standard:

> Failing to investigate information provided by others before publishing it, even when a reasonably prudent person would have done so, is not sufficient by itself to establish reckless disregard. However, publishing statements when the publisher entertains serious doubts about their truth can amount to reckless disregard. This subjective standard requires a "high degree of awareness of ... probable falsity." It may be satisfied when there exists obvious reasons to doubt the veracity of the person who supplied the information or the accuracy of the information itself. Thus, while the "failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category."

238 S.W.3d 270 at 301 (Tenn. Ct. App. 2007)(internal citations omitted).

In the present case, Winslow has conceded that he is, at least, a limited public figure. As a result, our focus is on whether "the record discloses clear and convincing evidence upon which a trier of fact could find actual malice." *Piper v. Mize,* No. M2002-00626-COA-R3-CV, 2003 WL 21338696, at \*7 (Tenn. Ct. App. June 10, 2003).

## A. Saltsman Motion for Summary Judgment

At the outset, we note that Winslow contends that the statement contained in the order granting summary judgment to Saltsman that "as a matter of law, Plaintiff failed to meet his burden to come forward with clear and convincing evidence of actual malice. Plaintiff made no affirmative showing of facts from which a reasonable juror could infer actual malice" evidences that the court erroneously applied the Tenn. Code Ann. § 20-16-101 standard rather than that set forth in *Hannan*. We do not agree with this contention. Negating an essential element of the nonmoving party's claim is common to both the *Hannan* standard and that set forth § 20-16-101. The language used by the trial court

and, more importantly, its resolution of the motion was, as more fully explained hereinafter, consistent with the *Hannan* standard and applicable law.[9]

Winslow's complaint alleges in conclusory fashion that "Mr. Saltsman and Mr. Fleischmann publicized matters concerning Mr. Winslow that placed him before the public in a false light that was highly offensive to a reasonable person," and that "[t]he Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Mr. Winslow was placed." On appeal, Winslow also argues that he was placed in a false light by Saltsman selectively presenting words and documents.

In support of his motion, Saltsman filed his affidavit and a statement of undisputed material facts.[10] Citing the following paragraphs from his statement of undisputed facts, Saltsman contends that he affirmatively negated the element of actual malice required for Winslow's false light claim:

> 83. Mr. Saltsman believed that the factual elements of the statements in issue that he made and that are alleged to be defamatory or constitute a false light invasion of privacy were true or substantially true. (Saltsman Affidavit, ¶ 8).[11]
>
> 85. Mr. Saltsman did not make or endorse any statement or advertisement with knowledge that such statement was false. (Saltsman Affidavit, ¶ 9).[12]
> 86. At all times relevant to this matter, Mr. Saltsman had a good faith belief that the statements and advertisements attributable to him were true as

---

[9] The trial court specifically clarified in its Feb 13, 2013 order that it had applied the *Hannan* standard with regard to Saltsman's motion for summary judgment and upon our review we find no evidence to show otherwise.

[10] In his statement of undisputed facts, Saltsman adopted and incorporated the 77 statements asserted in Fleishmann's statement of undisputed facts and added 16 statements.

[11] Paragraph 8 of Saltsman's affidavit states:

> 8. My statements that payments made to Mr. Winslow by the Tennessee Republican Party while he was working for Robin Smith's congressional campaign as a result of the employment arrangements made at the direction of Robin Smith were "at worst, illegal and, at best, just plain wrong" and had "shades of Florida where Jim Greer, who was the state party chair there, used state party funds for his own gains" were directed to the actions and conduct of Ms. Smith. Furthermore, I believed then that the factual elements of the statements were true or substantially true.

[12] Paragraph 9 of Saltsman's affidavit states:

> 9. I did not make or endorse any statement or advertisement regarding Mr. Winslow with knowledge that such statement was false.

reflected by news reports and articles, FEC reports, Plaintiff's employment agreement, and the financial information concerning the TRP. (Saltsman Affidavit, ¶ 10).[13]

87. At no time did Mr. Saltsman receive any information or other indication that the statements or advertisements at issue were false. (Saltsman Affidavit, ¶ 11).[14]

93. At all times relevant to this matter, Mr. Saltsman acted in good faith and without malice towards Mr. Winslow. (Saltsman Affidavit, ¶ 15).[15]

Saltsman's affidavit and the quoted portions of his statement of undisputed facts are evidence that he believed that his statements and the Fleishmann campaign advertisements were true, and that the FEC reports, news articles, TRP financial information, and the Employment Agreement reflected the truth of the statements. This is evidence that Saltsman's statements and the Fleishmann campaign advertisements were made without knowledge and without reckless disregard of any falsity, thereby negating the actual malice element in the false light claim. The burden then shifted to Winslow to produce evidence of specific facts establishing genuine issues of material fact on the issue of actual malice. *See Martin,* 271 S.W.3d at 84.

---

[13] Paragraph 10 of Saltsman's affidavit states:

> 10. At all times relevant to this matter, I had a good faith belief based on the information that I had been provided that my statements at issue in this case and the campaign advertisements published by the Fleischmann Campaign were true.

[14] Paragraph 11 of Saltsman's affidavit states:

> 11. At no time have I received any information that caused me to question or doubt the veracity or accuracy of or to harbor any serious doubt about the truthfulness of my statements or actions at issue in this case or the advertisements published by the campaign.

[15] Paragraph 15 of Saltsman's affidavit states:

> 15. At all times relevant to this matter, I acted in good faith and without malice toward Mr. Winslow.

In response to Saltsman's motion, Winslow filed his affidavit, his own statement of undisputed facts, and responses to Saltsman's statement of undisputed facts.[16] Winslow's responses to the undisputed facts quoted above state:[17]

83. RESPONSE: Objection. Mr. Saltsman does not understand and has not presented the factual elements and if he had this statement would be compound.

85. RESPONSE: Objection and disputed. This statement is itself false and compound. Belief in truth or actual truth is not a defense to Plaintiff's claim for False Light and Defamation by innuendo. He characterized an employment agreement as a "bonus." Saltsman Dep., p. 83, L.9. He said the arrangement was illegal and unethical. These are only examples.

86. RESPONSE: Objection and disputed. His subjective state of mind is not a "fact."

87. RESPONSE: Disputed. Saltsman has admitted in his deposition that the employment agreement failed to mention a "bonus" and Winslow's June 9 proposal was not executed and the FEC payments did not match either. He characterized the agreement as illegal. He gave stories to the press as a confidential informant then quoted them as "proof." He acknowledges that the "audit" was a review and the state seal a forgery.

Winslow's 16-page affidavit contains 47 numbered paragraphs, the first 21 of which recount a history of interaction, conflict and ill feelings between him and Saltsman in various campaigns and internal political party matters going back to 1995. In the remainder of the affidavit Winslow discusses the events leading to his departure as chief of staff of the TRP; negotiations relative to the Employment Agreement and the Release Agreement; and includes assertions relating to statements made by Saltsman on the radio program, and to the print media, in the campaign television and direct mail advertisements, and the documents posted on the internet website. There are no facts asserted in Winslow's statement of undisputed facts that provide evidence of any actual malice towards Winslow on the part of Saltsman.

Winslow's responses to the statement of undisputed facts are largely argumentative and unresponsive to the particular facts relied upon by Saltsman as pertinent to the issue of malice and which he asserts are undisputed. The responses

---

[16] Winslow's responses incorporated his responses to Fleishmann's statement of undisputed facts as well as the additional facts in Saltsman's statement.

[17] Winslow did not respond to Undisputed Fact 93.

simply do not put at issue whether or not Saltsman acted with knowledge or reckless disregard with respect to the veracity of his statements.[18]  In like manner, many of the statements in Winslow's affidavit are statements of past events in the context of the political environment in which they both operated and are seasoned with antipathy and ill will toward Saltsman.  As noted in *Lewis*, however, "[t]he concept of 'actual malice,' as embodied in *New York Times Co. v. Sullivan*, should not be confused with the concept of 'malice' that connotes personal ill will, hatred, or spite." *Lewis* 238 S.W.3d. at 300 (citing *Masson v. New Yorker Magazine*, Inc., 501 U.S. 496, 510 (1991)).  Construing the assertions in the affidavit liberally, they do not equate to the actual malice required for a cause of action for false light.

Taken as a whole and in context, none of the matters set forth in Winslow's affidavit, his responses to Saltsman's statement of undisputed facts, or his own statement of undisputed facts establish a genuine issue of fact with respect to Saltsman's actual malice.

Winslow also contends that Saltsman selectively presented words and documents to portray Winslow negatively[19]; in his brief on appeal, Winslow does not cite us to specific evidence in this regard.  We have reviewed the record and determined that Paragraphs 55, 57, and 58 of Saltsman's statement of undisputed facts contain relevant statements. The pertinent statements of undisputed facts are:

> 55. In late spring or early summer 2010, Saltsman found on the step of his garage an unmarked envelope containing a copy of Plaintiffs employment agreement with the TRP signed by Smith and a copy of the proposed release that Wes Kliner had prepared. (Saltsman Depo. 91:9-92:14; Winslow April 11, 2012 Depo. 46:18-48:3).

> 57. Neither Saltsman nor Mr. Fleischmann had a copy of the executed release until Plaintiff filed it as an exhibit to his complaints.  (Affidavit of Fleischmann; Saltsman Depo. 116:10-16; Winslow August 11, 2011 Depo. 180:12-22).

> 58. In the summer of 2010, the Fleischmann Campaign started a website, www.viewtheproof.com, on which it published the TRP financial records,

---

[18] Additionally, only one of Winslow's responses purports to be supported by specific citation to the record as is required under Tenn. R. Civ. P. 56.03.

[19] A false light claim may succeed even where the defendant's statements are literally true if the statements made were "discrete presentations of information in a fashion which rendered the publication susceptible to inferences casting [the plaintiff] in a false light." *West*, 53 S.W.3d at 649 n.5 (citing *Santillo v. Reedel*, 430 Pa.Super. 290, 634 A.2d 264, 267 (1993)).

Plaintiffs employment agreement, the FEC records, and Plaintiffs proposed release. (Saltsman Depo. 41:15-43:9).

The quoted portions of Saltsman's statement of undisputed facts and the relevant portions of the record evidence that Saltsman received copies of the Employment Agreement and Winslow Proposal; that he made both documents available online in conjunction with TRP financial records and FEC records; and that Saltsman did not possess or publish the Release Agreement. This is evidence that Saltsman published all the relevant documents in his possession and that he did not discretely present documents with knowledge or reckless disregard of their susceptibility to inferences casting Winslow in a false light; thus, the actual malice element of this portion of Winslow's false light claim was negated and the burden to produce evidence to show the existence of a genuine issue of fact with respect to actual malice shifted to Winslow.

Winslow responded to these relevant undisputed facts as follows:

55. RESPONSE: Undisputed that Saltsman has claimed this to have been how he received documents from Mark Winslow's personnel file.

57. RESPONSE: Undisputed that Saltsman and Fleischmann has so claimed.

58. RESPONSE: Disputed as to "TRP financial records." Certain pages were published, characterized as an "audit."

Winslow's responses do not dispute Saltsman's factual statements nor do the responses assert facts which create an issue for trial related to actual malice by Saltsman in his handling of the materials. Winslow did not otherwise point to overlooked evidence, rehabilitate evidence, produce any additional evidence establishing a genuine issue, or submit an affidavit explaining the necessity of further discovery. *See McCarley*, 960 S.W.2d at 588.

The existence of actual malice is a necessary element for Winslow's false light claim against Saltsman as well any surviving defamation claim. After reviewing the materials submitted at the summary judgment stage in the light most favorable to Winslow, there is no "clear and convincing evidence upon which a trier of fact could find actual malice." *Piper*, 2003 WL 21338696, at *7. Consequently, the trial court did not err in granting summary judgment to Saltsman.

## B. Fleischmann's Motion for Summary Judgment

The allegations and arguments set forth against Fleishmann in Winslow's complaint and on appeal, respectively, are those in the second paragraph of Section II A, *supra*.

In support of his motion for summary judgment, Fleishmann filed his own affidavit and a statement of undisputed facts. Fleishmann contends that he affirmatively negated the element of actual malice required by Winslow's false light claim against him; in support of this contention, Fleishmann cites his affidavit and other exhibits. Upon our review of the record, we have determined that the following paragraphs from the statement of undisputed facts contain the pertinent statements in this regard:

63. Saltsman's alleged statements that the payments made to Plaintiff were "at worst, illegal and, at best, just plain wrong" or could be similar to allegations against "Jim Greer" were not made, adopted, or repeated in any campaign advertisement, direct mailing, or by Mr. Fleishmann personally. (Affadavit of Fleishmann; Television Scripts SALTSMAN 000059-64; Print Advertisements SALTSMAN 000065-72; Winslow August 11, 2011 Depo. 236:12-20).[20]

69. Mr. Fleischmann did not make or endorse any statement or advertisement with knowledge that such statement was false. (Affidavit of Fleischmann).[21]

70. At all times relevant to this matter, Mr. Fleischmann had a good faith belief that the statements and advertisements attributable to him were true as reflected by news reports and articles, FEC records, Plaintiff's employment agreement, and the financial information concerning the TRP. (Affidavit of Fleischmann).[22]

---

[20] While the specific paragraph is not identified, we have reviewed Fleishmann's affidavit and Paragraph 9 appears to be the factual basis for Undisputed Fact 63:

9. I was not present for and did not participate in a radio interview of Mr. Saltsman on WGOW on July 27, 2012. To my knowledge, alleged statements by Saltsman that payments made to Mr. Winslow were "at worst, illegal and, at best, just plain wrong" or similar to allegations against "Jim Greer" were not made, adopted, or repeated in any campaign advertisement or direct mailing.

[21] While the specific paragraph is not identified, we have reviewed Fleishmann's affidavit and Paragraph 10 appears to be the factual basis for Undisputed Fact 69:

10. I did not make or endorse any statement or advertisement regarding Mr. Winslow with knowledge that such statement was false.

[22] While the specific paragraph is not identified, we have reviewed Fleishmann's affidavit and Paragraph 11 appears to be the factual basis for Undisputed Fact 70:

11. At all times relevant to this matter, I had a good faith belief based on the information that I had been provided that my statements at issue in this case and the advertisements published by the campaign were true.

14

71. At no time did Mr. Fleischmann receive any information or other indication that the statements or advertisements at issue were false. (Affidavit of Fleischmann).[23]

Fleishmann's affidavit and statement of undisputed facts are evidence that Saltsman's statements characterizing payments to Winslow as improper were not made or adopted by Fleishmann, or attributable to him or his campaign; that he believed that his statements and the campaign advertisements were true and that the FEC reports, news articles, TRP financial information, and the Employment Agreement are evidence of the truth of the statements. This evidence shows, regardless of the literal truth of the statements and publications, that Fleishmann did not act with knowledge or reckless disregard of any falsity in the referenced statements or campaign advertisements, thereby negating the actual malice element in the false light claim. The burden then shifted to Winslow to produce evidence of specific facts establishing genuine issues of material fact on those issues. *Martin,* 271 S.W.3d at 84.

In response to Fleishmann's motion, Winslow filed his affidavit, responses to Saltsman's statement of undisputed facts, and his own statement of undisputed facts. Winslow responded to the undisputed facts quoted above as follows:

63. RESPONSE: Undisputed

69. RESPONSE: Disputed

70. RESPONSE: Disputed

71. RESPONSE: Disputed. No reasonable person would have concluded the State of Tennessee audited the Republican Party. No lawyer licensed in Tennessee would have confused an employment agreement with a "bonus." No reasonable person with a law license could have concluded that Mark Winslow had violated the law. No one with simple math skills could have concluded that amount to be paid under the contract matched the amount paid by Chair Devaney.

There is no fact asserted in Winslow's affidavit or in his statement of undisputed facts that addresses actual malice towards Winslow on the part of Fleischmann.

---

[23] While the specific paragraph is not identified, we have reviewed Fleishmann's affidavit and Paragraph 12 appears to be the factual basis for Undisputed Fact 71:

12. At no time have I received any information that caused me to question or doubt the veracity or accuracy of or to harbor any serious doubt about the truthfulness of my statements at issue in this case or the advertisements published by the campaign.

Winslow does not dispute Paragraph 63 of Fleishmann's statement of undisputed facts, his responses to Paragraphs 69 and 70 are not supported by a specific citation to the record, and his response to Paragraph 71 consists solely of conclusory statements equally unsupported by specific citation; they fail to meet the requirements of Tenn. R. Civ. P. 56.03.[24] None of the matters set forth in Winslow's affidavit, responses to Fleishmann's statement of undisputed facts, or Winslow's own statement of undisputed facts establish a genuine issue of fact with respect to actual malice by Fleishmann.

Winslow also contends that Fleishmann selectively presented words and documents to portray Winslow negatively. The relevant statements of undisputed fact and responses are identical to those in our analysis in Section II A, *supra*; for the same reasons we hold that Winslow did not create a genuine issue for trial related to actual malice in Fleishmann's handling of the materials.

"[T]the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it…[s]ubmits affirmative evidence that negates an essential element of the nonmoving party's claim." T.C.A. § 20-16-101. Fleishmann affirmatively negated the element of actual malice in Winslow's false light claim against him; consequently, we the trial court did not err in granting Fleishmann's motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Fifth Circuit Court of Davidson County.

_____
RICHARD H. DINKINS, JUDGE

---

[24] "Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." Tenn. R. Civ. P. 56.03.